Bertha McIntire, Appellee, v. Tony Morris and John W. Lindsey, Appellants.

Ruth McIntire et al., Appellees, v. Tony Morris and John W. Lindsey, Appellants.

(Not to be reported in full.)

Appeal from the Circuit Court of Franklin county; the Hon ENOCH E. NEWLIN, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed April 17, 1916.

## Statement of the Case.

Two actions consolidated by agreement, the first by Bertha McIntire, plaintiff, against Tony Morris and John W. Lindsey, defendants, and the second by Ruth McIntire *et al.*, plaintiffs, against the same defendants, in the Circuit Court of Franklin county, to recover for injury to their means of support as the result of the death of J. E. McIntire, the husband of the first plaintiff and the father of the others, who were minors, such death being alleged to be the result of decedent becoming intoxicated by drinking liquor sold to him by defendants. From a judgment for the first plaintiff for $1,000 and from a similar judgment for the other plaintiffs, defendants appeal.

The evidence in the case was not contradictory in character, and showed the following to have been the facts: J. E. McIntire, the deceased, had been married eleven years and his family consisted of his wife, Bertha McIntire and two small children, Ruth and Dean McIntire. He was a miner, owned a home worth $1,000 subject to a $300 mortgage, and was making $4 a day when he worked. He and his family were dependent on his wages for support. About three weeks before his death he was hurt in the mine and was laid off from work. He was a candidate for check-weighman and was electioneering for the position. About

a week after he was injured he began to drink very heavily and slept and ate but little. He took large quantities of liquor home with him which he consumed during the night. He took his gun to bed with him and threatened to shoot his wife or to shoot through the floor at her feet, and acted in an irrational and dangerous manner. During this time he bought and drank liquor in the different saloons in Buckner, among others those of defendants. On Saturday previous to his death, which occurred the following Monday, he was arrested for disorderly conduct and locked up by the city marshal, Collins. Later in the day his wife came for him and took him home, his trial being set for Monday. He did not drink on Sunday, and on that day called on a neighbor, taking his gun with him and leaving it in the hall. He stated he was going to Benton to consult some attorney and see if he could not get satisfaction for his arrest and, if not, that he was going to shoot the "son of a gun"; that he had had trouble with Collins and made him "back down." On the following Monday morning at about eight o'clock he went to the saloon of defendant Morris, where he bought two drinks of whisky, and also a half pint bottle of liquor which he put in his pocket. At about 8:30 a. m. he went to the saloon of defendant Lindsey, and drank three or four drinks of whisky and some beer. A little later he returned and got another drink of whisky and then started to take a train to Benton. Before leaving Buckner he called a man by the name of Bowman out of another saloon and asked him to go to his, McIntire's, house and get his revolver, and said he would get Collins or Collins would get him. He then went to Benton on the train that left at 11:30 a. m. and returned on the 3:30 p. m. train. It was shown by the proofs that he was drinking in Benton and also on his return. About five o'clock he went to the city hall where his trial was to have been had, and after waiting twenty to twenty-five minutes, left there. A

little later his wife found him in defendant Morris' saloon. He had a glass of whisky in his hand, and his revolver was lying on the counter. He had taken about half of the whisky and after her arrival he drank the balance of the glass. Before leaving the saloon he drank still another glass and then he and his wife started down the street towards the city hall, where a horse and buggy was standing. His wife got into the buggy and while she was telling McIntire to get in, Collins opened a door near by. McIntire, who had been carrying his revolver in his hand, saw Collins and commenced shooting. He fired six shots, none of which took effect, but Collins fired at him in return and killed him. After McIntire's death a bottle was found in his pocket which appeared to contain whisky. No provocation was shown whatever for the attack and the coroner's jury found that the marshal killed McIntire in self-defense.

M. C. COOK and ROSE & SYMMES, for appellants; ROBERT J. NORDHOLD, of counsel.

F. M. GUINN and G. A. HICKMAN, for appellees.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

### Abstract of the Decision.

1. INTOXICATING LIQUORS, § 225*—*when evidence sufficient to show that deceased was killed by marshal in self-defense.* In an action under section 9 of the Dramshop Act (J. & A. ¶ 4609) to recover for loss of support by the death of a person while intoxicated as a result of drinking liquor sold to him by defendants, evidence *held* to show that deceased was killed by a city marshal in self-defense.

2. INTOXICATING LIQUORS, § 228*—*when proof as to death by intoxication sufficient.* In order to recover in an action under section 9 of the Dramshop Act (J. & A. ¶ 4609) for loss of support caused

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

by the death of an intoxicated person, the intoxication need not be shown to be the immediate, direct or proximate cause of the death, it being sufficient if the intoxication be the cause either proximate or remote.

3. INTOXICATING LIQUORS, § 228*—*when evidence sufficient to sustain finding that deceased met his death as result of intoxication.* In an action under section 9 of the Dramshop Act (J. & A. ¶ 4609) to recover for loss of support as a result of the death of a person while intoxicated, where deceased was shot in self-defense by a city marshal at whom deceased had fired while intoxicated, evidence *held* to warrant the jury in finding that deceased came to his death as a result of the intoxication.

4. INTOXICATING LIQUORS, § 228*—*when evidence sufficient to sustain finding that intoxication of deceased caused by liquor sold by defendants.* In an action under section 9 of the Dramshop Act (J. & A. ¶ 4609) to recover for loss of support as a result of the death of a person while intoxicated, evidence examined and *held* to warrant a finding by the jury that the intoxication of deceased was caused in whole or in part by liquor sold to him by defendants.

5. INSTRUCTIONS, § 159*—*consideration of series as a whole.* A series of instructions must be considered as a whole.

6. INTOXICATING LIQUORS, § 261*—*when instructions on cause of death not reversibly erroneous.* In an action under section 9 of the Dramshop Act (J. & A. ¶ 4609) to recover for the loss of support as a result of the death of a person who, while intoxicated, fired at a city marshal and was killed by him in self-defense, instructions which do not in terms require that the intoxication should have been the cause of the attempt to shoot the marshal are not reversibly erroneous where the instructions, considered as a whole, plainly inform the jury that in order to entitle plaintiffs to recover it must appear that the intoxication caused the act which led to the death of deceased.

7. APPEAL AND ERROR, § 1560*—*when refusal of instructions harmless error.* It is not reversible error to refuse instructions which are involved and somewhat misleading where the judgment is sustained by the evidence and substantial justice appears to have been done.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.